VAUDREUIL LUMBER COMPANY and another, Appellants, vs.
EAU CLAIRE COUNTY, Respondent.

*December 3, 1941—February 10, 1942.*

540

542

For the appellants there was a brief by *Stafford & Stafford,* attorneys, and *John J. Ensley* of counsel, all of Chippewa Falls, and oral argument by *Harold E. Stafford.*

*Connor Hansen,* district attorney, and *John D. Kaiser,* assistant district attorney, for the respondent.

MARTIN, J. Appellants contend that the court erred: (1) In adjudging that the county had the right to condemn the lands of the appellants; (2) in adjudging that the county takes title in fee; and (3) in holding that the county could legally maintain a dam capable of developing five hundred horsepower of hydroelectric energy. It should be noted that no reference is made in the findings of fact or in the conclusions of law to the capacity of the dam to develop electric energy; nor is any such reference made in the judgment. The judgment simply directs payment of the amount of damages stipulated to the respective property owners and to their mortgagees in the cases where there is a mortgage lien against their property. The judgment further provides:

"And that upon payment of said sum, together with plaintiffs' taxable costs, the title to the lands of the plaintiffs, described in the petition for condemnation, so far as said lands are or may be overflowed by the maintenance of said dam as

now constructed, shall vest in Eau Claire county, including all flowage rights, on said lands necessary for the maintenance and operation of said dam."

Appellants' first contention is that the county does not have corporate power to build and maintain the dam. The trial court found that on application of Eau Claire county to the public service commission for a permit to construct the dam a public hearing was held on November 5, 1937, pursuant to sec. 31.06, Stats.; that permission was issued by the commission on November 9, 1937; that a dam was constructed between November 9, 1937, and February 25, 1939, in the manner authorized and described in the permit; that since the dam was constructed it has been operated and maintained by the county; that the county owns the land on which the dam is located and has also acquired, by contract and purchase, flowage rights on all lands necessary for the maintenance of the dam, aside from the two hundred acres of land of the plaintiffs involved in these condemnation proceedings. The court further found that the dam was constructed by the Works Progress Administration, a federal agency, under contract made with Eau Claire county for its construction as a work project sponsored by the county; that the amount expended by the county to November 18, 1939, was $27,122.81; the amount contributed by the federal agency, $133,595. The county owns land in the vicinity of the dam which it has dedicated for park purposes as a part of its system of parks and places of recreation owned by it on the Eau Claire river. The pond created by the dam is intended to be used as a part of its system of parks and places of recreation. The county bases its right to acquire by condemnation for flowage needed for the maintenance of the dam upon secs. 59.07 (24) and 59.08 (34). The court held that the evidence showed compliance with the requirements of these statutes. Sec. 59.07 (24) provides:

"*Acquisition for flowage.* To acquire by purchase, gift or condemnation, such lands as may be required for flowage pur-

poses in connection with any dam completed under any county-sponsored work project."

Sec. 59.08 (34), Stats., provides:

"*Dams, erection.* Provide for the maintenance or erection and maintenance of dams in parks, parkways and playgrounds owned by the county and to that end may acquire the necessary rights and in the name of the county prosecute proceedings to obtain permission to erect and maintain such dams."

Appellants contend that since the two sections above quoted were created subsequent to the time of the erection of the dam, and do not purport to be retroactive and grant power or legalize acts performed prior to their passage, both statutes should be held to refer only to dams to be constructed after the enactment of the statutes. Sec. 59.07 (24), Stats., was created by ch. 312, Laws of 1939, and became effective August 9, 1939. The title is as follows:

"An act to create subsection (24) of section 59.07 of the statutes, authorizing county boards to acquire lands required for flowage purposes in certain cases."

It will be noted that sec. 59.07, Stats., enumerates the general powers of county boards. Sec. 59.07 (24) specifically authorizes county boards to acquire by purchase, gift, or condemnation, such lands as may be required for flowage purposes in connection with any dam *completed* under any county-sponsored work project. The lands required for flowage purposes relate to any dam regardless of when completed, if completed under any county-sponsored work project. It applies to dams completed before as well as after the effective date of ch. 312, Laws of 1939. Sec. 59.08 (34) was enacted by ch. 195, Laws of 1939, and became effective June 27, 1939. This adds a new subsection to sec. 59.08 which relates to special powers of county boards. It authorized the county board to provide for the maintenance or erection and maintenance of dams in parks, parkways, and playgrounds owned by the county. It confers upon the county board the power to ac-

quire the necessary rights, and in the name of the county to prosecute proceedings to obtain permission to erect and maintain such dams. In the instant case the county owned the land on which the dam was located. It has also acquired by contract and purchase flowage rights on all lands necessary for the maintenance of the dam aside from the lands involved in the present condemnation proceedings. The trial court found that the dam is located upon lands declared to be a part of the park system of Eau Claire county; that the pond created by the dam is intended to be used as a part of its system of parks and places of recreation.

Appellants argue that ch. 312, Laws of 1939, was passed to cover the situation in the instant case and therefore violative of sec. 23, art. IV, of the Wisconsin constitution, which provides:

"The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable."

There is no merit in this contention. The act is general in its terms. It does not state when the project must be completed. By its specific terms, whenever a county has completed a dam it may acquire lands for flowage purposes. We fail to see wherein there is any violation of the constitutional provision above quoted.

Appellants further contend that even if the statutes do confer authority upon the county to erect and maintain the dam, such legislation is unconstitutional because the maintenance of a dam the size of the one in question is not administrative or legislative in character. They refer to sec. 22, art. IV, of the constitution, which provides:

"The legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administrative character as they shall from time to time prescribe."

They argue that the construction or maintenance of a dam of any size or capacity may be local, but that it is neither legislative nor administrative in character; that it is nothing but engaging in private business, notwithstanding that its dominant purpose may be recreational. That the authorization of the construction of a dam of the character of the one in question is within the power of the legislature under the constitution has been held in *State ex rel. Hammann v. Levitan,* 200 Wis. 271, 228 N. W. 140; *New Lisbon v. Harebo,* 224 Wis. 66, 271 N. W. 659. The permit issued to the county on November 9, 1937, to construct the dam states that:

"The purpose of the proposed dam is to create a pond for recreation, the conservation of water, fish, game and wild life."

It further states:

"That the proposed dam is not built to develop power, but that the dam will be capable of developing over fifty theoretical horsepower for fifty per cent of the time."

We fail to find any basis for the claim that by reason of the construction and maintenance of the dam the county was engaging in private business. The pond or lake created by the dam for the purposes indicated in the permit, developed and maintained as a part of the county park system, clearly indicates the public character of the whole project. The minutes of the proceedings of the county board had on September 16, 1937, are in part as follows:

"Whereas, the federal government has agreed to grant Eau Claire county the sum of $137,840 to build the Altoona dam provided Eau Claire county will appropriate the sum of $20,000 for this project.

"Therefore, be it resolved by the county board of supervisors of Eau Claire county, that the sum of $20,000 be and the same is hereby levied upon all taxable property of said county for the purpose of carrying on this project."

It was a county-sponsored work project. It was so considered by the county board of supervisors and the Works Progress Administration. The appropriation to cover the county's share of the cost of the project was made pursuant to sec. 66.33 (1), Stats. 1937, which so far as here material provides:

"(1) The governing body of any county, town, city or village at any legal meeting is empowered to appropriate an amount of money for the carrying out of any projects which are eligible under the Wisconsin Works Progress Administration."

The trial court found that the dam was constructed by the Works Progress Administration, a federal agency, under a contract made with Eau Claire county for its construction as a work project sponsored by said county.

Appellants next argue that these condemnation proceedings should have been initiated by the county park commission; that said commission did not authorize the proceedings. While it is true that sec. 27.05 (3), Stats., empowers the park commission to acquire, in the name of the county, by purchase, land contract, lease, condemnation, or otherwise, with the approval and consent of the county board, such tracts of land or public ways as it may deem suitable for park purposes, it does not deprive the county board of its power to start these proceedings. Particularly in view of chs. 195 and 312, Laws of 1939, quoted above. Also sec. 59.01 gives to each county the power:

". . . To purchase, take and hold real and personal estate for public uses . . . and to do such other acts as are necessary and proper to the exercise of the powers and privileges granted and the performance of the duties charged upon it by law. . . ."

Sec. 59.02 (1), Stats., provides that the powers of a county as a body corporate can only be exercised by the county board

thereof, or in pursuance of a resolution or ordinance adopted by such board.

It is a matter of common knowledge that during the several years of the recent depression with its attendant nationwide unemployment, the federal government set up the Works Progress Administration to co-operate with local units of government for the purpose of creating employment on public projects wherever possible. In many instances special legislation by the various states was necessary in order to share the benefits of the federal program. We have many instances of such special legislation in this state, not necessary to be here pointed out. The project in the instant case is a good example of the co-operation between local units of government and the federal government; of county-sponsored projects carried out under the Works Progress Administration. The county board of Eau Claire county took preliminary steps as early as 1936. The dam was constructed between November 9, 1937, and February 25, 1939, pursuant to a contract made with the county for its construction as a work project sponsored by the county. We think it perfectly clear that the county has the power to institute and prosecute these condemnation proceedings, and that on the payment of the damages and costs awarded to appellants under the judgment herein the county gets title to the lands in question, so far as said lands are or may be overflowed by the maintenance of the dam now constructed, including all flowage rights on said lands necessary for the maintenance and operation of said dam.

A further claim is made by appellants to the effect that a certain lease entered into between the Chippewa Valley Construction Company as lessor and Eau Claire county as lessee is against public policy and violates sec. 31.22, Stats. This lease provides:

"The lessee agrees that during the term of this lease, including any extensions thereof, that it will pay all taxes of every

kind which may be assessed against the lands specifically described above (including the parts not flooded as well as the parts flooded), and including the lands over which the lessor owns only flowage easements. . . .

"It is specifically understood that the premises leased are for the purpose of a conservation reservoir, and that during the term of this lease the said dam shall not be used for the purpose of developing hydroelectric power, or other water power in any form whatsoever."

As to this contention the learned trial court, in connection with finding No. 7, said:

"Plaintiffs claim that this agreement [lease] violates section 31.22 of the statutes. Plaintiffs are not interested in the leased lands. A violation of section 31.22 would not affect the right of someone to maintain the dam. If the lease is invalid, its invalidity would not defeat the right to acquire by condemnation flowage rights on either the leased lands or other lands."

The lease provides that the lessee will pay taxes on the lands and flowage leased, whether used or not. The lessor owned title to some of the lands and flowage rights as to other lands. The lease covered all of lessor's interests. Appellants argue that this amounts to granting tax exemption to the lessor. Obviously this contention is not sound. As a consideration for the property and flowage rights leased the lessee agreed to pay the taxes. We fail to see anything contrary to public policy in this arrangement. The lease further provides that if the county should, at any time, make use of the dam for the purpose of developing hydroelectric power or other water power, the lease shall be void, leaving the lessor to its rights to claim damages for the use of its property; and, if the lessee should at any time fail to pay the taxes the effect would be to void the lease. It would not defeat the right of the county to acquire by condemnation flowage rights on either the leased lands or other lands.

Other questions raised by appellants, to which no specific reference has been made, have been carefully considered. They, however, are of a factual nature and such facts found by the trial court are against appellants' contentions, and the facts are fully sustained by the evidence.

*By the Court.*—Judgment affirmed.